## Freedman v. City of York

*David Wm. Bupp* and *Markowitz, Kagen & Griffith,* for plaintiffs.

*John W. Heller, 3rd, John R. Gailey, Jr.,* and *Donald A. Scott* and *Morgan, Lewis & Bockius,* for defendants.

SHADLE, J., December 18, 1967.—Plaintiffs brought this action in equity (a) to have an ordinance of the City of York (York) which granted a franchise to Susquehanna Broadcasting Company, Inc. (Susquehanna) declared unconstitutional; (b) to restrain York from authorizing Susquehanna to exercise rights thereunder; (c) to restrain Susquehanna from

exercising such rights, and (d) to require Susquehanna and Jerrold Electronics, Inc. (Jerrold) to remove from plaintiffs' property a pole they allegedly placed thereon in the exercise of such rights. Plaintiffs allege that the action is brought not only in their own right as property owners, but as taxpayers and on behalf of all taxpayers of the city.

The factual background is that York adopted an ordinance granting a nonexclusive license to Susquehanna, a private business corporation, to erect, maintain and operate a television transmission and distribution system (sometimes called community antenna television) by means of poles and wires over, along, across and upon the streets of the city and property over which the city has easements or rights-of-way. Susquehanna was permitted to use existing utility poles and to erect other poles. The ordinance stated that it was "adopted in the interest of public welfare and convenience". It required Susquehanna to "render efficient service in accordance with the rules and regulations" to be established by city council, including the requirement of furnishing certain enumerated services at not more than specified fees to be charged to customers, and to pay certain compensation to the city for the license. Susquehanna employed Jerrold to erect the poles and wires.

Plaintiffs, owners of property and taxpayers within the city, allege that Susquehanna and Jerrold erected a pole at an undisclosed location on the property of the former without their consent and that they refused to remove it, which creates a continuing trespass entitling them to equitable relief. Plaintiffs further aver that the ordinance is unconstitutional in permitting a nonpublic entity to use the public streets of the city for private commercial purposes.

All defendants have filed preliminary objections to the complaint in the nature of a motion for a more

specific complaint and a demurrer. Argument was had before the court en banc, and because of the nature of the case, this opinion and order are filed on its behalf. In support of the former motion, defendants contend that the complaint fails to state, as it should, (a) where on plaintiffs' property the pole is erected, since the legal results are different, depending on whether it is located in a public street or sidewalk, or elsewhere, and (b) how plaintiffs suffer any detriment from the pole.

As to the first contention, we agree that defendants might have the right to erect the pole in a street or sidewalk in which plaintiffs own the fee, but might not be authorized to locate it, for example, in the middle of plaintiffs' yard, over which no right-of-way exists. Defendants assert in their demurrer and briefs that the pole in fact is erected within the legal limits of the street and sidewalk. While we cannot consider such allegation in a "speaking demurrer", (Muia v. Fazzini, 416 Pa. 377 (1965)), the fact remains that if plaintiffs are required to amend and allege this to be so, defendants thereupon simply will do what they now can do, namely, admit that the pole is on land owned by plaintiffs, but deny that it unlawfully encroaches because it is within the city right-of-way. Since defendants undoubtedly do know where the pole is located, we think the case will be expedited by not requiring plaintiffs to amend on this point, but allowing defendants to raise the real issue by an answer.

The second point relating to the manner in which plaintiffs are damaged requires no discussion, since if the pole actually does constitute an unlawful encroachment on their land, defendants are committing a continuing trespass, an obvious and classic ground for equitable relief.

By their demurrer, defendants claim that the complaint fails to state a cause of action for four reasons: (1) the pole actually is within the street right-of-way and thus not an unlawful encroachment; (2) all acts done by defendants were pursuant to, and thus validated by, the ordinance; and (3) the ordinance itself is constitutionally valid; and (4) plaintiffs' taxpayers' action must fail because it alleges no loss to taxpayers of public funds.

As we previously noted, we cannot consider the first reason, being limited on demurrer to the facts disclosed by the complaint.

The second reason cannot be separately considered, because unless the ordinance is valid, acts done pursuant thereto cannot thereby be rendered lawful.

This brings us to the third reason, which is the crux of the entire case. May a municipality constitutionally grant to a private business corporation the right to maintain within the right-of-way of public streets poles and wires for the transmission of television programs to subscribing members of the community for a consideration?

There is a surprising dearth of authority as to what rights a third class city, of which York is one, may grant to others regarding use of public streets. The only statutory provision is an indirect one under the unusual heading of Referendum in the Third Class City Code of June 28, 1951, P. L. 662, sec. 10.4, 53 PS §36057. This states that:

"No franchise or consent to occupy the public streets, highways, or other places in any city of the third class shall be given or granted to *any person or persons*, railroad, railway, gas, water, light, telephone or telegraph company, or to any public utility corporation, except by ordinance . . ." (Italics supplied.)

This language obviously contemplates the grant of privileges to use streets to public utilities. That it may encompass a similar franchise to a "person", or

corporation, to operate a private community television antenna system is inferred in Farrell v. Altoona CATV Corporation, 419 Pa. 391 (1965). While that case merely held that a franchise for such a purpose can be granted only by ordinance and not by resolution, it must have been assumed by the parties and the court that a privilege could be given for such service by a proper legislative enactment.

Hertz Drivurself Stations, Inc. v. Siggins, 359 Pa. 25 (1948), dealt at considerable length with the issue of when a business could be considered to be so affected by a public interest as to warrant its *regulation* as a public utility. This obviously is a different question from that of what rights may be *granted* by a municipality and to *whom*. However, defendants here have argued, in effect, that a community antenna television system is a matter of such public benefit and concern as to warrant a grant of the questioned franchise to Susquehanna, whether or not such a use of public streets could be allowed to a private party. Hertz contains language which casts some illumination on that issue.

The court there said that a business is affected with a public interest which warrants regulation when it offers a service of which "the public has a real and continuing need and no ready means of obtaining it otherwise", and that it is "the monopolistic attribute of a business" furnishing a "needed and useful service to the public" which creates such public interest. It gave as an example of such activity "any business whose owner, by devoting it to the public use . . . in effect grants the public an interest in that use . . ." The court further stated that the circumstances "must be such as to create a peculiarly close relation between the public and those engaged in it (the business), and raise implications of an affirmative obligation on their part to be reasonable in dealing with the public".

On the other hand, Hertz also pointed out that "A business is not affected with a public interest merely because it is large or because the public are warranted in having a feeling of concern in respect of its maintenance. Nor is the interest meant such as arises from the mere fact that the public derives benefit, accommodation, ease or enjoyment from the existence or operation of the business . . ."

The court further stated that while highways are subject to governmental regulation, "In no true sense . . . is the power ever exercisable for the purpose of conferring upon a private person a special or exclusive right in the use of highways for private gain".

Finally, Hertz noted that a legislative recital such as the one here involved, that the enactment is "in the interest of public welfare and convenience", is not conclusive, and that issue remains for judicial determination.

Hertz makes it obvious that a description of the factors clothing an activity with a "public interest" is extremely difficult to capture in words. The monopolistic factor there mentioned does not exist here, since the ordinance specifically reserved to York the right to grant other such licenses.

One other case, dissimilar on its facts, contains language helpful in some degree, (46 South 52nd Street Corporation v. Manlin, 398 Pa. 304 (1960)), involved the question of whether abutting property owners could enjoin the maintenance by an individual of a newsstand structure on the sidewalk in front of their premises. The court there said:

"We begin with the basic proposition that a purely private use of the public highway with no reasonable benefit to the public generally not only may be prevented by the municipality, but is not even permissible".

However, the court then proceeded to add:

"No person, corporation or individual has the right to make a special or exceptional use of the public highway not common to all citizens *except by grant from the sovereign power* . . . The highways belong to the commonwealth in trust for the great body of the people, and he who claims a peculiar privilege to invade them *must establish his right under some statute, or valid municipal regulation, ordained in pursuance of statutory authority*". (Italics supplied.)

The Manlin case proceeded to hold that since the municipality had not authorized the newsstand, the abutting owners could enjoin its maintenance. It is to be noted here there is a properly enacted ordinance specifically granting the use defendants seek to exercise.

Television has pervaded our civilization to an extent equalling if not exceeding furnaces, telephones, electric lights and bathtubs. Individual television antennas sprout from roof tops with the abundance of heating chimneys. Competition among purveyors of the appliances and performers and sponsors on the medium involves billions of dollars. More news and events are conveyed by it to more people with more speed than by any other device known to man. In the light of these facts of life, no more pleasant nor unpleasant than other facts of life, we are not prepared to hold in a summary proceeding that a municipality is constitutionally incapable of granting a franchise to use poles and wires over public streets for what is in actuality a community-shared single television antenna. We think the Farrell case, supra, and the quoted section of the Third Class City Code, supra, indicate that such a license can conceivably be awarded to a private individual or business corporation. We further believe that even if this is not the case, defendants are entitled to submit evidence on whether

the system in fact has characteristics entitling it to the benefits enjoyed by businesses affected with a public interest, and which, like utilities, may be granted similar rights to the use of public streets. Accordingly, we decline at this time on demurrer to hold the ordinance in question constitutionally invalid. This ruling, however, will not preclude further consideration of this most difficult and complex problem in disposing of the case on the merits.

Defendants' final ground for demurrer is that the complaint is defective as a taxpayers' suit. In this, they must be sustained. It has repeatedly been held that such an action must allege actual or threatened pecuniary loss or wrongful expenditure of tax money or wasting of public assets: Regan v. Stoddard, 361 Pa. 469 (1949); Loewen v. Shapiro, 389 Pa. 610 (1957); Price v. Philadelphia Parking Authority, 422 Pa. 317 (1966). Plaintiffs allege the spending of no public funds whatever, and, in fact, the license produces revenue to the city. The mere use of existing poles, which may or may not be public property, or installation of new poles within the public right-of-way, or the stringing of wires in the air over streets cannot in any circumstances rise to a "wasting of public assets". While this portion of plaintiffs' complaint must be dismissed, this will have no effect on their right to pursue their private remedy to seek protection of their own property, nor their right, as city property owners, to attempt to restrain defendants from doing acts which they as such property owners may be able to establish as invalid.

## ORDER

And now, December 18, 1967, defendants' preliminary objections in the nature of a demurrer to that portion of plaintiffs' complaint which asserts the action on behalf of themselves as taxpayers and all other

taxpayers of the city is sustained. The preliminary objections in the nature of a demurrer in all other respects, and in the nature of a motion for a more specific complaint, are overruled, with leave to file an answer on the merits within 20 days from this date. Exceptions are noted on behalf of all parties.